UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

                         Plaintiff,

v.                                                 Case No. 21-cv-154-pp

JENNIFER KARYON,

                         Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING MOTION TO CONSOLIDATE (DKT. NO. 8)**

Timothy Durley, who is in custody at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant failed to provide him medical treatment for breathing difficulties he suffered from his severe asthma. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and denies his motion to consolidate this case with another case he has filed, dkt. no. 8.

I.     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was in custody when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 9, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $3.49. Dkt. No. 6. The court received that fee on March 1, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint alleges that on December 21, 2020, while the plaintiff was in restricted housing at Waupun, officers "chemically sprayed" Donald Alford, who was in the cell next to the plaintiff. Dkt. No. 1 at 2. The plaintiff pressed his emergency call button and told Officer Mason (not a defendant) that he needed his nebulizer treatment and to notify the nurse that he couldn't breathe; Mason said "ok." Id. The plaintiff also told the range officer, Ms. Grosskoph (not a defendant) that he couldn't breathe and to notify a nurse;

3

Grosskoph said okay and walked off. Id. at 2-3. Nurse Jennifer Karyon came to the restricted housing range with Officer Hollelefelder (not a defendant). Id. at 3. The plaintiff says the food trap of his cell was open to assess him because he had just returned from court and was on quarantine, so his pulse was taken. Id. The plaintiff told Karyon that he could not breathe because Alford had been chemically sprayed and that he needed to be pulled out and assessed with a nebulizer treatment. Id. He alleges that Karyon "was aware of [his] asthmatic need's [and] she [knew his] asthmatic history." Id. at 4. He asserts that Karyon said "ok after dinner i will have you pulled out." Id. at 3. The plaintiff alleges that Hollelefelder's body camera recorded this. Id. The plaintiff alleges that after "dinner hours pass &" he was not pulled out, assessed or given a nebulizer treatment, the plaintiff stopped Officer Grosskoph and asked why Karyon had not pulled him out to be assessed or given a nebulizer treatment; Grosskoph "said she didn[']t know why, she ain[']t here." Id.

The plaintiff says that around bedtime during evening medication pass he saw Karyon "walking fast with a[n] asthmatic inhaler in her hand." Id. He tried to stop her to ask why he had not been pulled out to be assessed and given nebulizer treatment, but that she ignored him. Id. The plaintiff says that when Karyon walked back, he again attempted to stop her; he noticed that there was no inhaler in her hand, and she continued to ignore him and walked off the range. Id. Grosskoph stopped at the plaintiff's cell to distribute his medication. Id. The plaintiff again asked why Karyon had not provided him nebulizer treatment. Id. The plaintiff says,

4

> Officer Grosskoph said well, she gave me this to give to you, & held up the same exact inhaler i had on my person's, when i saw her walk pass me, i showed Officer Grosshoph the same inhaler that i had in my possession, she just shook her head & said she dont know.

Id. at 4.

The plaintiff wrote to the Health Services Unit and an unnamed supervisor about the incident. Id. They allegedly replied that the plaintiff "was seen on 12-23-20 [and] nothing was wrong with [him]," which the plaintiff claims was a lie. Id. He alleges that he was not assessed, but that his temperature and pulse were taken because he was out for court and returned December 14, 2020, so he was in quarantine for fourteen days. Id.

The plaintiff alleges he suffered loss of sleep and difficulty breathing and lying down. Id. at 5. He sues Karyon "at her fullest capacity [and] individually." Id. at 4. He seeks compensatory and punitive damages. Id. at 5. He also requests that Karyon be forced to resign from working at Waupun. Id.

C. Analysis

The plaintiff sues Karyon in her "fullest capacity." The court construes this to mean the plaintiff seeks to sue Karyon in her *official* capacity. Claims against a state employee in her official capacity represent another way to plead an action against the entity that the employee represents or for which the employee works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges Karyon is an employee of the Wisconsin Department of Corrections and works at Waupun. The court construes the claim against Karyon in her official capacity as having been brought against the DOC, the

5

agency for which she works. Graham, 473 U.S. at 165–66. Because claims against the DOC are "no different from a suit against the State itself," the court construes the claim as if the plaintiff brought it against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But a state is not a "person" against whom the plaintiff may recover monetary damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff seeks an award of damages. He also wants Karyon to resign from her position at Waupun. The plaintiff may file a complaint against Karyon with the State of Wisconsin's Department of Safety and Professional Services. See https://dsps.wi.gov/Pages/RulesStatutes/Nursing.aspx. But the court does not have the authority to order the DOC to terminate one of its employees or to force the employee to resign from her position. This means that the only relief the plaintiff may pursue in this lawsuit is his request for damages. Because a citizen cannot seek an award of damages from the state (the defendant in the claim against Karyon in her official capacity), the plaintiff may proceed on his claim against Karyon only in her individual capacity. The court will dismiss the plaintiff's official capacity claim.

The plaintiff's individual capacity claim arises under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834

6

(1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he suffers from severe asthma and was unable to breath because of the chemical agent officers used on Donald Alford. He alleges that he informed Karyon that he could not breathe and needed nebulizer treatment. The plaintiff asserts that Karyon said she would treat him after dinner, but that she never came back to do so. He further alleges that an officer later gave the plaintiff an inhaler from Karyon, but that it was the inhaler he already had. Although the plaintiff does not specifically say so, the court infers that the inhaler he had did not provide the same treatment for his asthma as the nebulizer would have.

The fact that Karyon told the plaintiff she would come back and pull him out for assessment after dinner and then did not does not necessarily show that she *intentionally* refused to treat the plaintiff. The facts he alleges could indicate that Karyon forgot to come back after dinner, as she'd indicated. If she merely forgot about the plaintiff's request until later, Karyon would have been at most negligent in failing to provide the plaintiff treatment, and negligence is

7

not enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

But the plaintiff also alleges that that he tried twice to get Karyon's attention when she returned to the range, but that she ignored him and walked quickly past. He alleges that after Karyon walked quickly past him twice, Grosskoph told him that Karyon had given her an inhaler to give to the plaintiff. He alleges that Karyon knew about the plaintiff's history of asthma. If Karyon knew the plaintiff needed nebulizer treatment but provided him only an inhaler like one he already had, one could conclude that she showed deliberate indifference to his medical condition. Although the plaintiff's allegations are thin, they suffice to state an Eighth Amendment claim against Karyon.

The plaintiff also alleges that the Health Services Unit and an unnamed supervisor responded to his request for treatment and falsely told him that health officials assessed him two days after the incident and determined that nothing was wrong. The plaintiff did not name the HSU or the supervisor as defendants. Even if he had named the supervisor or a HSU employee as a defendant, it is not clear whether their false report of the plaintiff's assessment and condition could constitute a constitutional violation. The court will not allow the plaintiff to proceed on a claim against the Health Services Unit or the unnamed supervisor.

### III. Motion to Consolidate (Dkt. No. 8)

On October 12, 2021, the court received from the plaintiff a motion to consolidate this case with another case he has filed, Case No. 21-cv-153. Dkt.

No. 8. The plaintiff says that the two cases are very similar—they both arose out of deliberate indifference and failure to assess him for his asthma and to give him a nebulizer treatment—but that they involve different nurses. Id.

On February 8, 2021—the same day the court received the complaint in this case—the court received from the plaintiff the complaint in Case No. 21-cv-153. That complaint alleges that on December 18, 2020—three days before the events he describes in the complaint in this case—a different individual was sprayed with chemical spray, the plaintiff asked a different nurse for an assessment and nebulizer treatment, and that different nurse told him he would be assessed but he was not. Durley v. Ahlborg, Case No. 21-cv-153 (E.D. Wis.), Dkt. No. 1 at 2-3.

The court understands why the plaintiff wishes to consolidate the two cases—as he points out, the facts are similar. But Federal Rule of Civil Procedure 20(a)(2) says that a defendant may join defendants in a case only if two conditions exist: (A) "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (B) "any question of law or fact common to all defendants will arise in the action." The transaction or occurrence in this case occurred on December 21, 2020 and involved facts surrounding the chemical spraying of Donald Alford and Karyon's response to the plaintiff. The transaction or occurrence in Case No. 21-cv-153 occurred on December 18, 2020 and involved facts surrounding the chemical spraying of a different

9

Case 2:21-cv-00154-PP    Filed 05/23/22    Page 9 of 12    Document 11

individual and the response of a different nurse. Though the facts are similar, it is not appropriate to join the defendants in a single case.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Jennifer Karyon. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.51** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are in custody at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing the case without further notice.

The court **DENIES** the plaintiff's motion to consolidate. Dkt. No. 8.

Dated in Milwaukee, Wisconsin, this 23rd day of May, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**