UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

                    Plaintiff,

          v.                                    Case No. 21-cv-154-pp

NURSE JENNIFER KACYON,

                    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON
EXHAUSTION GROUNDS (DKT. NO. 18)**

          Plaintiff Timothy Durley, who is incarcerated at Waupun Correctional

Institution and representing himself, is proceeding under 42 U.S.C. §1983 on

an Eighth Amendment claim against a nurse at Waupun.The defendant has

moved for summary judgment on the ground that the plaintiff failed to exhaust

his administrative remedies before bringing the complaint. Dkt. No. 18. The

plaintiff opposes the motion. Dkt. No. 25. The court finds that the plaintiff

exhausted his administrative remedies and denies the defendant's motion for

summary judgment.

**I.      Facts**

          A.      <u>Procedural Background</u>

          The complaint alleges that on December 21, 2020, Nurse Jennifer

Kacyon failed to provide the plaintiff nebulizer treatment for breathing

difficulties he suffered after another incarcerated person was sprayed with a

chemical agent. Dkt. No. 1. The court allowed the plaintiff to proceed on a

claim that Kacyon was deliberately indifferent to the plaintiff's medical needs in violation of his rights under the Eighth Amendment. Dkt. No. 11 at 7–8.

On July 25, 2022, the court entered a scheduling order setting a September 8, 2022 deadline for the defendant to file a motion for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before bringing this lawsuit. Dkt. No. 15. On the September 8, 2022 deadline, the defendant filed this motion for summary judgment on exhaustion grounds. Dkt. No. 18. She also filed a motion asking the court to stay the deadlines for the parties to conduct discovery and file dispositive motions on the merits pending a decision on the exhaustion motion. Dkt. No. 22. On September 15, 2022, the court granted that request. Dkt. No. 23. The court also ordered the plaintiff to respond to the defendant's motion for summary judgment by October 10, 2022. Id. On September 19, 2022, the court received the plaintiff's brief and supporting documents responding to the motion. Dkt. Nos. 24–29. The defendant filed her reply ten days later. Dkt. Nos. 30–31.

B.      Factual Background

The court considers the parties' proposed facts "only to the extent they are clearly and obviously supported by citations to the . . . record." Jenkins v. Syed, 781 F. App'x 543, 545 (7th Cir. 2019) (internal quotation marks omitted). The court will deem admitted any facts that the plaintiff does not properly contest. See Civil L. R. 56(b)(4); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

2

1.    *The Plaintiff's Institutional Complaints*

The plaintiff was incarcerated at Waupun in December 2020, when the events underlying this lawsuit occurred. Dkt. No. 20 at ¶1. Defendant Kacyon was employed as a Nurse Clinician 2 at Waupun at the time. Id. at ¶2.

In December 2020, the plaintiff filed two institutional complaints about nurses who failed to provide him nebulizer treatment after other incarcerated persons were chemically sprayed. Id. at ¶6. The first complaint is dated December 18, 2020, and it alleges that the same day, Nurse Albert Robert never pulled the plaintiff from his cell to administer nebulizer treatment after prison staff chemically sprayed another incarcerated person. Dkt. No. 21-2 at 8. The complaint examiner's office stamped this complaint "received" on January 4, 2021, and assigned it number WCI-2021-59. Id. at 1, 8. A complaint examiner reviewed the complaint and rejected it as moot because there was no evidence that the plaintiff requested but did not receive medical treatment. Id. at 1. The plaintiff appealed the rejection of the complaint two days later, but the reviewing authority affirmed the rejection. Id. at 4–5. The plaintiff asserts this complaint "is irrelevant to this case" because it involves a different incident than the one alleged in this §1983 complaint. Dkt. No. 26 at ¶7.

The second complaint is dated December 23, 2020. Dkt. No. 21-3 at 8. This complaint alleges that the same day, staff chemically sprayed an incarcerated person, and the plaintiff notified staff "to inform the nurse." Id. The plaintiff alleged that later, when "Nurse Jen" was performing "medication

rounds," he told her he needed nebulizer treatment, and "she said okay [and] walked off." Id. He said that no one came to pull him from his cell to provide him treatment. Id. The plaintiff asserted that he is "a severe asthmatic" and that he "needs to be giv[en] a nebulizer treatment when inmates are chemically sprayed." Id. The complaint examiner's officer stamped the complaint as received on both January 6 and January 11, 2021, and designated it WCI-2021-553. Id. The receipt shows that the complaint office formally received the complaint on January 11, 2021.[1] Id. at 1.

On January 13, 2021, an institutional complaint examiner rejected the plaintiff's complaint. Id. at 2. The complaint examiner notes in her decision that she contacted "AHSM [Assistant Health Services Manager] Weinman" about the complaint. Id. Weinman reviewed the plaintiff's medical records "and stated that the inmate was seen on 12/23/20 at 1659 and no issues were noted with screening." Id. The complaint examiner concludes, "There is no evidence that the inmate requested any nebulizer treatment." Id. The complaint examiner cites §DOC 310.06(6)(c) and rejects the complaint because it "lacks merit or is otherwise frivolous." Id. The rejection notes that, "Per DOC 310.10(10), you may appeal the rejection of this complaint within 10 days to the appropriate reviewing authority." Id. The "Print Date" of this report is

---

[1] Both parties assert that this complaint concerns events that occurred on December 23, 2021. Dkt. No. 20 at ¶9; Dkt. No. 26 at ¶9. The complaint uses the date "12-23-20" three times and nowhere references December 23, 2021; that date had not even occurred when the institutional complaint office received the complaint. Dkt. No. 21-3 at 8 (stamped received on "JAN 06 2021" and "JAN 11 2021." It appears that December 23, 2020 is the correct date for the events discussed in this complaint.

January 14, 2021, which it is undisputed is the day the plaintiff received it. Id. at 2–3; Dkt. No. 28 at ¶6; Dkt. No. 31 at ¶15.

The plaintiff filed a request for review of his rejected complaint, which is dated January 17, 2021. Dkt. No. 23-1 at 9. But the complaint examiner's office did not receive the plaintiff's appeal until January 27, 2021. Id. at 4–5, 9. The review form instructs the incarcerated person to "state briefly why you disagree with the reason for the rejection of your complaint." Id. at 9. The plaintiff wrote,

> B cuz i was not properly assess
> I just got back from c[o]urt December 14-2020 [and] I was on Quartine [and] Nurse Jen only stopped at my door on the 23 to take my temp [and] i prior told Officer Grosskroph [and] Mason [and] Hollfeleder body cam was on when i ask Nurse Jen for a nebulizer treatment 303pm to 3:20

Id. On February 5, 2021, the reviewing authority reviewed the plaintiff's appeal and rejected it as untimely because it was received "Beyond 10 calendar day limit." Id. at 5–6.

It is undisputed that the plaintiff did not file any returned (rather than rejected) institutional complaints related to the claim at issue in this lawsuit. Dkt. No. 20 at ¶12; Dkt. No. 26 at ¶12.

### 2. The Plaintiff's Proposed Facts

Several of the plaintiff's proposed facts discuss the merits of his claim against the defendant, including her actions and other events that occurred from December 21 through 24, 2020. Dkt. No. 27 at ¶¶3–11. This order addresses only whether the plaintiff exhausted his administrative remedies for his claim against the defendant before bringing this lawsuit. This order will not

address the merits of the plaintiff's claim. See Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 536 (7th Cir. 1999) (noting that where the defendant raises the issue of exhaustion, a district court "must not proceed to render a substantive decision until it has first considered § 1997e(a)").

The plaintiff maintains that the defendant "did assess [his] breathing on 12-23-20 which is when [he] asked 'Jen' for [him] to be pulled out and received a nebulizer." Dkt. No. 27 at ¶11 (citing "exhibit A-3 and exhibit B-1"). Exhibit B-1 is an undated request from the plaintiff asking prison staff to preserve hallway video footage from December 18 and 23, 2020. Dkt. No. 28-1 at 1. On January 19, 2021, prison staff respond that the videos he requested "were saved." Id. These videos are not in the record. Exhibit A-3 shows medical assessments the defendant performed on the plaintiff at 16:59 CST (4:59 p.m.) on December 23, 2020. Id. at 6. The assessments relate to a screening of the plaintiff for symptoms of COVID-19, including sore throat, vomiting and weakness or numbness. Id. Nurse Kacyon also took notes on the plaintiff's respiratory system. Id. She notes his respirations were "Unlabored, Quiet," and that he "Responds with sentences, phrases, words." Id. She describes the plaintiff's respiratory pattern as "Regular."[2] Id.

The plaintiff reviews complaint WCI-2021-553 (his December 23, 2020 complaint against "Nurse Jen") and asserts that he "filed a timely appeal dated

---

[2] The plaintiff also filed two pages of "Assessments" performed on December 21, 2020. Dkt. No. 28-1 at 3–4. These documents show Nurse Kacyon screened the plaintiff for COVID-19 at 16:07 CST (4:07 p.m.). Id. She noted no symptoms of COVID-19, including shortness of breath. Id.

1-17-21, exhibit – 1002 – 009."[3] Dkt. No. 27 at ¶16. Exhibit 1002-009 is a copy of the plaintiff's appeal that the defendant included in her exhibits. Dkt. No. 28-1 at 14; Dkt. No. 21-3 at 9. The plaintiff does not dispute that his appeal "was received on 1-27-21 by reviewing authority." Dkt. No. 27 at ¶17 (citing Dkt. No. 21-3 at 6).

The plaintiff asserts that defense counsel "never checked to see when [his] self addressed stamp envelope was mailed off as [he] ha[s] to use a stamp envelope when [he is] sending off an appeal to reviewing authority." Id. at ¶18. He asserts "it was a busy holiday week" before he filed his institutional complaint and appeal; he asserts "that mail is delayed by accident or on purposed [sic] to delay a person from exhausting their remedies." Id. at ¶19. In support of these proposed facts, the plaintiff cites lines of his declaration that aver the same facts about his appeal and mail delays. Dkt. No. 28 at ¶¶8–9.

The plaintiff reiterates that the reviewing authority determined that the plaintiff's appeal was late because he filed it beyond the ten-day limit but insists "in fact i[t] wasnt" filed late. Dkt. No. 27 at ¶¶22–23. In support he cites only his declaration, which asserts that the days from January 14 to 17, 2021, and from January 17 to 27, 2021, amount to "only 9 business day's" because "weekends and holidays don't c[o]unt as a business day." Dkt. No. 28 at ¶¶11–

---

[3] The "7" in "1-17-21" looks like both a "4" and a "7;" it appears the plaintiff wrote one number and then attempted to replace it with the other number. Dkt. No. 27 at ¶16. The defendant objects to the plaintiff's proposed fact, which she reproduced as asserting the plaintiff "filed a timely appeal dated 1-14-21." Dkt. No. 31 at ¶16. The plaintiff's appeal is clearly dated January 17, 2021, and not January 14, 2021. Dkt. No. 21-3 at 9.

12. The defendant objects to the plaintiff's assertion that he timely filed his appeal. Dkt. No. 31 at ¶23 (citing Dkt. No. 21 at ¶14).

Although the complaint alleges that the underlying incident occurred "on 12-21-20," dkt. no. 1 at ¶2, the plaintiff says "it may have been a small mistake by the court when they printed up – typed [his] complaint as December 21, 2020." Dkt. No. 27 at ¶24. He alternatively asserts that he "may had made [*sic*] a mistake of writing the wrong date in [his] complaint." Id. at ¶25. He asserts that he "still filed a ICE complaint concerning what, where, when, who, why, took place concerning this incident." Id. at ¶26. In his response to the defendant's proposed facts, the plaintiff similarly suggests "the courts may have [e]ntered the incorrect date, when typing up [his] complaint as it, is a[n] error maybe by the courts or a possible harmless error by [him]." Dkt. No. 26 at ¶3. He says the defendant saw him "on both days on December 21, 2020 and December 23, 2021."[4] Id.

## II.    Discussion

### A.    Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material

---

[4] The court again presumes the plaintiff meant December 23, 2020, and not 2021. See *supra*, note 1.

fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than allegations to defeat a motion for summary judgment; he instead must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). The court must construe all facts in the light most favorable to the plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. See Anderson, 477 U.S. at 255.

B.     Exhaustion

Under the Prison Litigation Reform Act, an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated person must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances

9

or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93), overruled on other grounds by Henry v. Hulett, 969 F.3d 769, 774 (7th Cir. 2020). That means that if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez, 182 F.3d at 535. "Substantial compliance with administrative remedies" does not satisfy the PLRA. Farina v. Anglin, 418 F. App'x 539, 543 (7th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 739 (2001), and Dole, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System ("ICRS") to allow incarcerated persons to file complaints about policies, rules, living conditions and staff actions at their institutions. Wis. Admin. Code §DOC 310.06. Incarcerated persons must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee or agent of the DOC. Id. §310.05. An

incarcerated persons must file a complaint with the complaint examiner's office within fourteen calendar days of the incident. Id. §310.07(2). Each complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." Id. §310.07(5)–(6). A complaint examiner must accept, return or reject the complaint. Id. §310.10(2). The complaint examiner still assigns a file number to a rejected complaint. Id. §310.10(3). The complaint examiner may reject a complaint for one of several reasons, including that "[t]he issue lacks merit or is otherwise frivolous." Id. §310.10(6)(c). If the incarcerated persons wishes to appeal a rejected complaint, he must do so within ten days by writing to "the appropriate reviewing authority." Id. §310.10(10). An institutional complaint "need not lay out the facts, articulate legal theories, or demand particular relief;" the complaint is sufficient so long as it "alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).

C.    Analysis

It is undisputed that the plaintiff filed an institutional complaint about Nurse Kacyon refusing him nebulizer treatment. It is undisputed that an institutional complaint examiner rejected that complaint, that the plaintiff filed an appeal and that the reviewing authority rejected that appeal as untimely. The court must resolve the following issues: 1) whether the plaintiff's institutional complaint exhausts his administrative remedies for the claim alleged in his §1983 complaint even though the two complaints use different

dates; 2) whether the complaint examiner's rejection of the institutional complaint means the plaintiff did not and could not have exhausted his administrative remedies for this claim; and, if the answer to 2) is "no," then 3) whether the plaintiff timely appealed the rejection of his institutional complaint.

        1.    *The Date of the Alleged Incident*

The plaintiff suggests that either he or the court made a mistake about the date of the incident alleged in his §1983 complaint, but maintains that the defendant refused him treatment on both December 21 and 23, 2020.

The court did not make an error in the screening order. The complaint alleges that "on 12-21-20," an incarcerated person was sprayed, the plaintiff told Nurse Kacyon he could not breathe and she did not pull him out of his cell to provide treatment. Dkt. No. 1 at 2–3. The complaint mentions December 23, 2020 only once; it asserts that in response to the plaintiff's request for health services, prison staff told the plaintiff that he "was seen on 12-23-20 [and] nothing was wrong with [him]," which the plaintiff asserts "is a lie" and that he "was not assess[ed], [his] temp [and] pulse was taken due to [him] being on quarantine because [he] was out for court [and] returned on 12-14-20." Id. at ¶9; see Dkt. No. 11 at 5. The plaintiff's institutional complaint alleges that "on 12-23-20" an "inmate was chemically sprayed," and the plaintiff did not receive nebulizer treatment. Dkt. No. 21-3 at 8. That complaint was filed the same day (December 23, 2020) and does not mention December 21, 2020. Id.

Either identical instances of an incarcerated person being sprayed and the plaintiff being denied nebulizer treatment occurred on both December 21 and 23, 2020, or (more likely) the plaintiff misstated the day of the events in either his §1983 complaint or his institutional complaint. It does not matter for purposes of this decision which date is the correct one because the defendant does not dispute "that the plaintiff filed a rejected ICE Complaint regarding the claims made in this case." Dkt. No. 31 at ¶26. The court finds that the plaintiff's error in identifying the date of the incident is immaterial for purposes of this decision and does not render his institutional complaint unexhausted.

2. *Rejection of the Plaintiff's Institutional Complaint*

It is undisputed that the complaint examiner did not accept or return the plaintiff's institutional complaint; she rejected the complaint under §310.10(6)(c) because she concluded that it "lack[ed] merit or is otherwise frivolous." Dkt. No. 21-3 at 2. Ordinarily, a complaint that is *rejected* for procedural reasons, rather than *dismissed* after a determination on the merits, does not exhaust a prisoner's administrative remedies. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citing Pozo, 286 F.3d at 1025); Parker v. Almonte-Castro, No. 21-CV-509-BBC, 2022 WL 2274875, at *4 (W.D. Wis. June 23, 2022) ("[W]hen a complaint is rejected for procedural reasons, it cannot satisfy the exhaustion requirement even if appealed."). But courts in this district have concluded that rejection of an institutional complaint does not *necessarily* render it unexhausted. See Lindell v. Greff, No. 19-C-827, 2021 WL 718237, at *3 (E.D. Wis. Feb. 24, 2021) ("Because inmates must follow the

ICRS rules to properly exhaust, *sometimes* the rejection of an offender complaint demonstrates that the plaintiff did not follow the rules and therefore did not properly exhaust." (emphasis added)).

The court did not find any case in either district of Wisconsin where a court concluded that an incarcerated person's complaint rejected as without merit or frivolous under §310.10(6)(c) was not and could not be exhausted. But courts have considered whether a claim rejected for other reasons listed in DOC §310.10(6) was (or could be) exhausted. The Seventh Circuit has held that "a prison grievance rejected solely on the basis of untimeliness [§310.10(6)(e)] will not fulfill the exhaustion requirement." Conyers, 416 F.3d at 584. A court in this district similarly concluded that a prisoner's complaint "rejected for not containing sufficient information to support a complaint [§310.10(6)(d)] . . . does not exhaust administrative remedies." Padilla v. Nelson, No. 19-C-1081, 2021 WL 1192371, at *4 (E.D. Wis. Mar. 30, 2021) (citing Jones v. Frank, No. 07-CV-141, 2008 WL 4190322, at *2–*3 (W.D. Wis. Apr. 14, 2008)); see also McSwain v. Schrubbe, No. 08-C-157, 2009 WL 728453, at *2 (E.D. Wis. Mar. 17, 2009), aff'd, 382 F. App'x 500 (7th Cir. 2010) (finding that prisoner's complaint procedurally rejected for failing "to allege sufficient facts upon which redress may be made" did not exhaust administrative remedies).

The same court that decided Padilla concluded in another case that a complaint examiner's rejection of an incarcerated person's complaint under the same subsection of §310.10(6) did not render it unexhausted where the complaint "provided ample information about his claim," so the complaint

examiner's "decision functioned not as a procedural rejection but as a dismissal on the merits of the plaintiff's claim." Walker v. Schonasky, No. 21-C-675, 2021 WL 5771128, at *4 (E.D. Wis. Dec. 6, 2021). The Seventh Circuit similarly explained "that if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted." Conyers, 416 F.3d at 584 (citing Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004)). A court in the Western District of Wisconsin has said the same but in reverse: "[I]f prison officials reject a grievance for failing to comply with a procedural requirement and they decline to address the merits of the grievance, the general rule is that the prisoner has not exhausted his administrative remedies and any lawsuit the prisoner later files must be dismissed." Simpson v. Greenwood, No. 06-C-612-C, 2007 WL 5445538, at *3 (W.D. Wis. Apr. 6, 2007) (citing Dixon v. Page, 291 F.3d 485 (7th Cir. 2002); Lewis v. Washington, 300 F.3d 829 (7th Cir. 2002); and Pozo, 286 F.3d at 1025).

These cases indicate that if a complaint examiner relies *solely* on a procedural error when rejecting an incarcerated person's complaint, that complaint does not and will not exhaust the incarcerated person's administrative remedies, even if the incarcerated person timely appeals. But if the complaint examiner goes further and decides the merits of the incarcerated person's complaint, that merits decision renders the incarcerated person's remedies exhausted *even if* the complaint examiner "rejects" the complaint for a reason listed in §310.10(6).

The complaint examiner here rejected the plaintiff's December 23, 2020 complaint "in accordance with DOC 310.10(6)(c) which states: '(c) The issue lacks merit or is otherwise frivolous.'" Dkt. No. 21-3 at 2. But in doing so, the complaint examiner investigated the plaintiff's claim (however cursorily) and reviewed its merits. She contacted Assistant Health Services Manager Weinman about the plaintiff's claim; Weinman reviewed the plaintiff's medical records and found that medical staff saw the plaintiff on December 23, 2020, and noted no issues with his breathing. Id. The complaint examiner used that information to conclude, "There is no evidence that the inmate requested any nebulizer treatment." Id. Even though the complaint examiner cited §310.10(6)(c) to "reject" the plaintiff's complaint for procedural reasons, her decision functioned as a dismissal on the merits of the plaintiff's claim. In other words, she concluded that the complaint lacked merit only because she reviewed the merit of the complaint.

The purpose of the PLRA's exhaustion requirement "is to permit the institution's 'administrative process to run its course before litigation begins.'" Lindell, 2021 WL 718237, at *2 (quoting Dole, 438 F.3d at 809). The plaintiff's December 23, 2020 complaint accomplished that. It provided sufficient information about what his issue was, who it involved, when and where it occurred and why the plaintiff was grieving the issue. The complaint alleged that at 3:10 p.m. on December 23, 2020 (when), in the restricted housing unit (where), "Nurse Jen" (who) did not provide him medical treatment (what) that he, as a "severe asthmatic," needs when a nearby incarcerated person is

16

chemically sprayed (why). Using this information, the complaint examiner contacted medical staff, who reviewed the plaintiff's medical records and determined the plaintiff was screened for breathing issues, and he had none. The defendant's position that the plaintiff's complaint failed to "give the prison notice of a problem, and an opportunity to address it," is not supported by the record. Dkt. No. 19 at 4 (citing <u>Turley v. Rednour</u>, 729 F.3d 645, 650 (7th Cir. 2013)).

The court finds that the plaintiff's complaint adequately notified the prison of his concern and provided an opportunity to address it. The complaint examiner's rejection of the plaintiff's complaint operated not as a procedural rejection of the complaint but instead as a dismissal on the merits of the complaint. The court finds the complaint examiner's decision does not render the plaintiff's December 23, 2020 complaint unexhausted.

3.    *The Timeliness of the Plaintiff's Appeal*

That leaves only the question of whether the plaintiff timely appealed from the complaint examiner's rejection of his complaint. Under Departmental rules, the plaintiff had ten days to appeal the rejection of his complaint. Wis. Admin. Code §DOC 310.10(10). The complaint examiner's January 13, 2021, decision cites §310.10(10) and notifies the plaintiff of the ten-day time limit. Dkt. No. 21-3 at 2. The plaintiff does not dispute that he had ten days from the day of that decision to appeal the rejection of his complaint.

It is undisputed the plaintiff's appeal is dated January 17, 2021. Dkt. No. 21-3 at 9. It also is undisputed the reviewing authority did not receive the

plaintiff's appeal until January 27, 2021—fourteen days after the complaint examiner rejected the complaint. Id. at 9. Neither party explains this ten-day discrepancy. The plaintiff's institutional complaints show a similar discrepancy. The plaintiff signed complaint WCI-2021-59 on December 18, 2020, but the complaint examiner did not receive it until January 4, 2021. Dkt. No. 21-2 at 7–8. The plaintiff signed complaint WCI-2021-553 on December 23, 2020, but the complaint examiner did not receive it until January 11, 2021. Dkt. No. 21-3 at 7–8.

It is not clear why it consistently took up to two weeks for the complaint examiner's office to receive the plaintiff's grievances. A prison is not "required to assume that the date a filing is signed is the same date that it was placed in the prison mailbox for delivery." Pollard v. Nikolai, No. 20-C-1868, 2021 WL 4502724, at *3 (E.D. Wis. Oct. 1, 2021) (emphasis omitted). But the plaintiff should not be faulted for a delay in prison staff receiving complaints or appeals that he timely placed in the prison complaint receptacle. See George v. Smith, No. 05-C-0403-C, 2006 WL 3751407, at *7 (W.D. Wis. Dec. 12, 2006), aff'd, 507 F.3d 605 (7th Cir. 2007) (finding prisoner timely filed appeals of administrative complaints by depositing them "in the prison mail within the 10-day timeframe required" under DOC policy).[5]

---

[5] The plaintiff may be entitled to the benefit of the signed-on date based on the prison mailbox rule. See Taylor v. Brown, 787 F.3d 851, 859 (7th Cir. 2015) (explaining that under mailbox rule, "a pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies," usually the date the prisoner signed the document). But it is unclear whether the prison mailbox rule applies to

The plaintiff says defense counsel did not review the envelope he used to mail his appeal to the reviewing authority. Dkt. No. 28 at ¶8. He says it was a holiday week when he filed his appeal, and it is possible his mail was either accidentally or purposefully delayed to keep him from timely appealing. Id. at ¶9. The plaintiff also filed a declaration from Kurtis D. Jones, another incarcerated person at Waupun, who avers that Waupun "has a practice of holding mail in the security office for days before sending it out, and often times [the] mail becomes lost in the process." Dkt. No. 29. Jones says he has "been threw [*sic*] this ordeal several times wheather [*sic*] it was done maliciously or accidently [he] can not say for sure, but each time, important documents came up missing or seriously delayed." Id.

Jones's declaration is not helpful because it says only generally that his mail has been lost before; he does not aver he knows anything about *the plaintiff's mail*, or about the plaintiff at all. Moreover, Jones discusses *outgoing* mail "coming in and going out" of the prison, not internal prison mail, such as grievances and appeals. Because Jones has no personal knowledge about the plaintiff's appeal, his declaration is not evidence of the date the plaintiff filed his appeal or the reason for the delay in the reviewing authority receiving it. See Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (citing Fed. R. Civ. P. 56(e) (now Rule 56(c)(4)) and Fed. R. Evid. 602).

---

administrative complaints sent through prison mail. See George, 2006 WL 3751407, at *6 (noting that "the Seventh Circuit has never been presented directly with the question whether a Wisconsin inmate's grievance or grievance appeal is timely . . . if it is placed in the prison mail within 10 days").

The plaintiff similarly has no personal knowledge about whether defense counsel reviewed the envelope the plaintiff says he used to file his appeal. Nor does he have personal knowledge that someone accidentally or intentionally held his mail, delaying it from reaching the reviewing authority. But it would be reasonable to infer that one of those things *may* have happened; mail often goes missing, gets delayed in transit or sits on a desk unattended. Many Wisconsin prisons were short-staffed in December 2020 and January 2021 because of complications from the COVID-19 pandemic. It is reasonable to infer that staff in Waupun's complaint examiner's office were working fewer days at that time because of the pandemic. That could explain why that office regularly "received" the plaintiff's papers days or weeks after he filed them.

The plaintiff filed his institutional complaint on December 23, 2020—only two days before the prison likely took a holiday break. That *could* explain why the complaint examiner did not receive the complaint until well into the new year. The plaintiff speculates that this is the case, dkt. no. 27 at ¶19, but there is no *evidence* in the record confirming that occurred. The day the plaintiff signed his appeal—January 17, 2021—was a Sunday, and the next day was a federal holiday (Dr. Martin Luther King Day). Again, that *could* explain why the reviewing authority may not have received the plaintiff's appeal for an extra day or two. But there is no *evidence* in the record to confirm or deny that. Even if there were, it is hard to determine why a one-day federal holiday would create a ten-day delay in receiving internally mailed grievances or appeals.

The reason for the delay matters because, as noted, it is the defendant's burden to prove that the plaintiff failed to exhaust his administrative remedies. See Pavey, 544 F.3d at 740–41. That means the defendant must present evidence showing the plaintiff did not timely appeal the rejection of his complaint. The court must construe the facts in the light most favorable to the plaintiff as the non-moving party. See Anderson, 477 U.S. at 255. In her reply, the defendant asserts that the plaintiff's "claim that he timely filed an appeal is contradicted by the uncontroverted evidence which demonstrates that he did not." Dkt. No. 30 at 3. That misstates the record. The *only* evidence in the record of the date on which the plaintiff filed his appeal is the appeal itself, which is dated January 17, 2021, and his declaration that that is the correct date. Dkt. No. 21-3 at 9; Dkt. No. 28 at ¶7. The envelope the plaintiff says he used to file his appeal is not in the record. The defendant has presented no evidence in support of her position that the plaintiff did not timely file his appeal of his rejected complaint. She provides evidence only that the reviewing authority did not *receive* the plaintiff's appeal until January 27, 2021—several days too late. But the day the reviewing authority *received* the plaintiff's appeal is not the same as the day he *filed* it.

The court finds that the defendant has presented no evidence showing the plaintiff filed his complaint appeal beyond the ten-day limit to do so. The evidence shows that the plaintiff timely filed his appeal on January 17, 2021. The reviewing authority should not have rejected the appeal as untimely. Because the reviewing authority denied the plaintiff further review of his

complaint, there were no other administrative remedies available. The court finds that the plaintiff exhausted his available administrative remedies.[6]

## III.  Conclusion

The defendant has not satisfied her burden to prove the plaintiff failed to exhaust his available administrative remedies before bringing his §1983 complaint. She is not entitled to judgment as a matter of law.

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 18.

The court will enter a separate order setting new deadlines for the parties to complete discovery and file dispositive motions, if they choose.

Dated in Milwaukee, Wisconsin this 29th day of October, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**

---

[6] Because the defendant has not presented any facts demonstrating that the plaintiff failed to exhaust his available administrative remedies, the court will not hold an evidentiary hearing as described in Pavey, 544 F.3d at 742. See Aguirre v. Witek, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (citing Doss v. Gilkey, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009)).